UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:17-cr-00073-JAW-3 |
| | ) | |
| JAMIE BETANCES, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION
ON MOTION TO SUPPRESS**

This matter is before the Court on Defendant's motion to suppress evidence obtained during and as the result of the stop of a motor vehicle in which Defendant was a passenger on May 10, 2016. (Motion, ECF No. 439.) Defendant contends law enforcement officers lacked the requisite suspicion to stop the vehicle.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court deny the motion to suppress.

**Proposed Findings of Fact**

The material facts are largely uncontroverted. Based on the record evidence,[1] I recommend the Court find the following facts:

1. On May 10, 2016, upon receiving a report of suspicious activity, members of the Gardiner (Maine) Police Department made contact with a motor vehicle in which

---

[1] The parties agreed that an evidentiary hearing was not necessary and that the record evidence consisted of the exhibits to Defendant's motion (ECF Nos. 439-1, 439-2, 439-3) and the exhibits to the Government's opposition to the motion. (ECF Nos. 447-1, 447-2.)

Jeff Berard and Heatherly Wing were located. After a brief investigation, Mr. Berard and Ms. Wing were arrested.

2. Mr. Berard expressed a desire to speak with members of the Maine Drug Enforcement Agency (MDEA). Special Agents from MDEA then met with Mr. Berard.

3. Mr. Berard told an agent that he had been working with a man named "Coast" from Rochester, New York, to distribute heroin and crack cocaine in Maine. According to Mr. Berard, his residence on Center Road in Fairfield, Maine (the residence) was used as a stash house for the storage of heroin and crack cocaine until the drugs were distributed.

4. Mr. Berard also informed law enforcement that he had approximately $150,000 worth of heroin and crack cocaine hidden in the residence in a green duffel bag and that a male named Wes was in the residence with the drugs.

5. Based on the information provided by Mr. Berard, law enforcement requested and obtained a state search warrant to search the residence, and any motor vehicles that Mr. Berard, Ms. Wing or Wes were operating or in which vehicles they were passengers at the time of the execution of the warrant.

6. In anticipation of the issuance of the warrant, MDEA agents conducted surveillance of the residence. The agents observed a number of people going in and out of the residence.

7. At approximately 5 p.m. on May 10, an agent observed a pick-up truck arrive at the residence. Law enforcement knew the truck to belong to a person known to

be involved in drug activity. The agent did not identify the suspected owner of the vehicle as the operator of the truck.

8. The operator of the truck entered the residence. Shortly thereafter, the operator left the residence and placed multiple backpack-type bags in the truck. The operator then entered the vehicle and another person got into the passenger side of the vehicle.

9. Upon observing the operator and passenger get into the truck, through a radio communication, the agent asked local law enforcement officers to stop the vehicle. Law enforcement engaged their emergency lights approximately .2 of a mile from the residence, and stopped the vehicle approximately .4 to .45 miles from the residence. Defendant and illegal drugs were found in the vehicle.

10. A few minutes after the stop of the vehicle, law enforcement officers executed the search warrant and conducted a search of the residence.

## Discussion

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio,* 392 U.S. 1, 9 (1968)). The Government bears the burden of establishing that a stop complied with the Fourth Amendment. *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004).

To justify the warrantless stop of a vehicle, officers must be able to articulate why there are "specific and articulable facts which, taken together with rational inferences,"

generate a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 21, 30. This standard, known as the "reasonable suspicion" standard, is easier to meet than the probable cause standard required to obtain a warrant. "A finding of reasonable suspicion requires a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Brown*, 621 F. 3d 48, 55 (1st Cir. 2010) (quoting *United States v. Espinoza*, 490 F.3d 41, 47 (1st Cir. 2007)). The reasonable suspicion standard, however, is not satisfied if an officer points to facts that do nothing more than generate a hunch that a vehicle or its occupants may be involved in criminal activity. *Id.* at 22. In satisfying this standard, an officer is permitted to rely on other officers' knowledge of the facts and circumstances to form the conclusion that a stop is justified. *United States v. Barnes,* 506 F.3d 58, 63 (1st Cir. 2007) ("[R]easonable suspicion can be imputed to the officer conducting a search if he acts in accordance with the direction of another officer who has reasonable suspicion."); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997) (discussing the "fellow-officer/collective-knowledge rule").

Here, Defendant contends law enforcement lacked a reasonable articulable suspicion to stop the vehicle because a green bag was not observed, none of the individuals leaving the residence fit the description of Wes (the person identified by Mr. Berard as being at the residence with the drugs), and law enforcement did not identify the operator of the vehicle or the passenger in the vehicle as the suspected owner of the vehicle.

Defendant's argument is unpersuasive. Prior to the stop of the vehicle, law enforcement was aware of Mr. Berard's report that his residence was used as a repository for heroin and crack cocaine, that he had been part of an effort to distribute heroin and

4

crack cocaine in Maine, and that on May 10, 2016, $150,000, worth of heroin and crack cocaine was located in his residence. In addition, prior to the stop of the vehicle, law enforcement observed a number of individuals come and go from the residence, which movement is consistent with drug activity. Law enforcement also observed a vehicle of a person known to be involved in drug activity arrive at the home and the operator of the vehicle enter the residence, leave the residence with multiple backpack-type bags, and place the bags in the vehicle.

The facts known to law enforcement, together with "rational inferences," *Terry*, 392 U.S. at 21, 30, are sufficient to justify the stop of the vehicle. That is, given that law enforcement observed conduct consistent with drug activity at a residence where a substantial amount of illegal drugs was located, given that the drugs located at the residence were to be distributed in the area, and given that an individual arrived at the residence in a vehicle of a person known to law enforcement as a person involved in illegal drug activity, entered the residence and left the residence soon thereafter with multiple backpack-type bags, which were placed in the vehicle, law enforcement could reasonably suspect that the occupants of the vehicle were involved in drug-related criminal activity and that evidence of criminal activity was located in the vehicle as the operator drove the vehicle from the residence.

## Conclusion

Based on the foregoing analysis, I recommend the Court deny Defendant's Motion to Suppress (ECF No. 439).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of May, 2018.