UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:17-cr-00073-JAW-3 |
| | ) | |
| JAMIE BETANCES | ) | |

**ORDER AFFIRMING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

The Court overrules a defendant's objection to the recommended decision of the Magistrate Judge in which the Magistrate Judge declined to suppress evidence obtained as a result of the stop and search of a motor vehicle. The Court rejects one of the defendant's objections because he mischaracterizes the Recommended Decision and the Magistrate Judge's finding is consistent with the record. The Court rejects the other of the defendant's objections because his distinction makes no difference. Having performed its obligation to make a de novo review of the Recommended Decision, the Court affirms the recommendation of the Magistrate Judge and declines to suppress evidence from the stop and search of the vehicle.

**I.  BACKGROUND**

On March 12, 2018, Jamie Betances moved to suppress the May 10, 2016 stop of a vehicle in which he was a passenger and the subsequent search of the vehicle under the Fourth Amendment. *Def.'s Mot. to Suppress Vehicle Stop* (ECF No. 439). The United States Magistrate Judge filed with the Court on May 15, 2018 his Recommended Decision, in which he recommended that the Court deny the motion

(ECF No. 511) (*Recommended Decision*). The Defendant filed his objection to the Recommended Decision on May 29, 2018 (ECF No. 523) (*Def.'s Obj.*).

## II. JAMIE BETANCES' OBJECTIONS

### A. A Mischaracterized Finding

Jamie Betances raises two objections to the Recommended Decision, each attacking the factual basis for the recommendation. In the first objection, Mr. Betances writes:

> The Recommended Decision concludes that a "number of people" were observed coming and going from the home prior to the stop, and it was consistent with drug activity. Recommended Decision at p. 2, 5. The record establishes that only one vehicle came and went (twice) from the home before the pick-up truck. There is no factual basis to conclude that this activity was consistent with drug activity.

*Def.'s Obj.* at 3.

Mr. Betances' objection—either deliberately or not—mischaracterizes the Magistrate Judge's finding. In the Recommended Decision, the Magistrate Judge wrote:

> In addition, prior to the stop of the vehicle, law enforcement observed a number of <u>individuals</u> come and go from the residence, which movement is consistent with drug activity.

*Recommended Decision* at 5. Mr. Betances disputes the finding on the ground that "only one <u>vehicle</u> came and went (twice) from the home before the pick-up truck." *Def.'s Obj.* at 3. But the Magistrate Judge did not limit his finding to people in vehicles. The stipulated record reveals the following coming and going of people at the Berard residence; some in vehicles, some not:

(1) 12:02 – white male dressed in a white tank top and dark colored backpack

and a female dressed in black exited the residence and went into the drive and then returned into the Berard home;

(2) 12:07 – two white males exited the Berard residence and began walking on Center Road. The officer, who grew up in the area, recognized one of the males as Scott Perry, a person the officer knew while growing up and a name of interest in the investigation;

(3) the two white males turned down a gated dirt road and he and the other male were "milling around" this area for several minutes before returning to the Berard residence;

(4) 12:22 – two males exited the Berard residence, the same two males the officer had observed earlier;

(5) These two white males again turned down the same dirt road and milled around;

(6) 16:25 – an older model Buick pulled into the Berard residence and a single male existed the motor vehicle and went into the residence;

(7) 16:26 – the male left in the car one minute later;

(8) 16:32 – the same male who was in the Buick returned and went into the residence;

(9) 16:34 – a white female in a red sweater exited the residence and went to the passenger window of the Buick;

(10)  16:34 – the male who was in the Buick exited the Berard residence;

(11)  16:44 – the male who drove the Buick left in the Buick;

(12)  17:00 – a white Ford Pickup drove into the Berard driveway and the male driver got out of the pickup and entered the residence. The owner of the truck was identified as Jeffrey Charette, a known drug user and dealer;

(13)  Short time later – The male driver of the white pickup truck exited the Berard residence carrying backpack type bags to the rear of the pickup. Scott Perry, the subject of the investigation (who the police were informed was going to deliver illegal drugs to the Berard residence) went to the rear of the pickup with the driver and loaded items into the truck. The driver got into the driver's seat and a person that the officer could not see because his view was blocked got into the passenger seat of the pickup. The truck

backed out of the driveway and headed east out of town.

*Def.'s Mot.* Attach. 2, *Maine Drug Enforcement Agency Investigative Report* at 1-4 (*MDEA Report*). Taken as a whole, the evidence amply justifies the Magistrate Judge's actual finding that the police observed "a number of individuals come and go from the residence, which movement is consistent with drug activity." *Recommended Decision* at 5. The Court rejects Mr. Betances' objection, which is based on a mischaracterization of the Magistrate Judge's conclusion.

Regarding the vehicles themselves, on May 10, 2016, the Buick drove into the Berard driveway at 16:25. The driver exited the vehicle and entered the Berard residence, exiting the residence only one minute later at 16:26. He then drove off and returned six minutes later at 16:32. The driver again went into the Berard residence and emerged two minutes later at 16:34. The next vehicle, the white Ford pickup, arrived at 17:00 and the driver entered the Berard residence, exiting a short time later with backpack-type bags, which he placed in the back of the pickup. Although standing alone this activity might not be conclusive, it is consistent with drug trafficking and supports the Magistrate Judge's conclusion, based on the totality of the evidence, that law enforcement legally stopped the white pickup.

### B. The Identity of the Driver of the White Pickup

In the Recommended Decision, the Magistrate Judge wrote:

> At approximately 5 p.m. on May 10, an agent observed a pick-up truck arrive at the residence. Law enforcement knew the truck to belong to a person known to be involved in drug activity. The agent did not identify the suspected owner of the vehicle as the operator of the truck.

*Recommended Decision* at 2-3. In his objection, Mr. Betances states:

4

The Recommended Decision concludes [the] pick up truck stopped was known to "belong to a person known to be involved in drug activity." *Id.* at p. 2-3. The record however only establishes that the truck matched the description of a truck known to belong to a known drug dealer in the area. And as the Recommended Decision sets forth the known drug dealer was not seen with the truck at home.

*Def.'s Obj.* at 3.

On this point, at least, Mr. Betances does not mischaracterize the record in his objection. As the Court understands it, Mr. Betances is making a rather subtle distinction between the police confirming that the white pickup actually belonged to Mr. Charette, such as running the license plate and confirming ownership, and the police believing that the vehicle belonged to him based on their prior experience with Mr. Charette. In the context of this case, Mr. Betances' distinction makes no difference. The police report states:

> Around 17:00 hours, I observed a white Ford pickup with a cap on the back and red/black writing on the doors, pull into the driveway of Center Rd. I observed a single male (driver) exit the truck and go into the residence. I advised S/A Jon Richards of this information to forward to S/A Hooper. S/A Agents Hooper and Richards advised me that they are familiar with this truck and that it belongs to Jeffery Charette. I am aware from my work with MDEA that Charette is a known drug user and known drug dealer from other drug investigations that the Augusta MDEA office has conducted.

*MDEA Report* at 2. Here, law enforcement was investigating a potential drug trafficking operation in a relatively small Maine town, Fairfield, and the white pickup was distinctive. Based on Special Agent Blodgett's description of the white Ford pickup with a black cap and red/black writing on the doors that pulled into the Berard driveway, other officers familiar with Jeffrey Charette, a known local drug dealer and

5

user, were able to identify the vehicle as belonging to him.  Mr. Betances has given no reason for this Court to conclude that the officers were wrong.  Of course, when the pickup was later stopped, the driver turned out to be Jeffrey Charette.

## III. CONCLUSION

The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision and set forth herein, and determines that no further proceeding is necessary.

1. It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge (ECF No. 511) be and hereby is <u>AFFIRMED</u>.

2. It is further <u>ORDERED</u> that the Defendant's Motion to Suppress (ECF No. 439) be and hereby is <u>DENIED</u>.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2018